1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9  JOE BABY BURNELL,                          CASE NO. 1:10-cv–00049-LJO-BAM PC

10              Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                              RECOMMENDING THAT DEFENDANTS'
11       v.                                   MOTION FOR SUMMARY JUDGMENT BE
                                              GRANTED IN PART AND DENIED IN PART
12  FERNANDEZ GONZALEZ, et al.,
                                              (ECF Nos. 28, 30, 31, 32)
13              Defendants.
    _____/         OBJECTIONS DUE WITHIN THIRTY DAYS
14

15          **Findings and Recommendations on Motion for Summary Judgment**

16  **I.    Procedural History**

17          Plaintiff Joe Baby Burnell, a state prisoner proceeding pro se and in forma pauperis in this

18  civil rights action pursuant to 42 U.S.C. § 1983, filed this action on November 17, 2009, in the

19  Central District of California.  On January 11, 2010, the action was transferred to the Eastern District

20  of California.  (ECF No. 7.)  Plaintiff's complaint was screened, and on August 31, 2010, an order

21  issued directing Plaintiff to either file an amended complaint or notify the Court of his willingness

22  to proceed on the claims found to be cognizable in the complaint.  (ECF No. 12.)  Following

23  Plaintiff's notice that he wished to proceed on the claims found to be cognizable, this action is

24  proceeding on the complaint, filed December 10, 2009, against Defendants Razo, Moreno, and

25  Rodriguez for the excessive use of pepper spray, and Defendants Olmus, Moreno, Martinez, and

26  Razo for failing to decontaminate Plaintiff from the effects of the pepper spray.[1]  (ECF Nos. 3, 14.)

27  _____

28      [1]On September 27, 2010, Plaintiff's remaining claims were dismissed for failure to state a claim.  (ECF No.
    14.)

1   On March 5, 2012, Defendants filed a motion for summary judgment. (ECF No. 28.) At the order

2   of the Court, Plaintiff filed an opposition on May 5, 2012.[2] (ECF Nos. 30, 31.) Defendants filed a

3   reply on May 10, 2012. (ECF No. 32.) The motion is been deemed submitted. Local Rule 230(l).

4   **II.    Summary Judgment Legal Standard**

5          Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

6   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

7   is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time

8   for discovery and upon motion, against a party who fails to make a showing sufficient to establish

9   the existence of an element essential to that party's case, and on which that party will bear the burden

10  of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to

11  liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150

12  (9th Cir. 2010). The "party seeking summary judgment bears the initial responsibility of informing

13  the district court of the basis for its motion, and identifying those portions of the 'pleadings,

14  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

15  which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S.

16  at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

17         If the moving party meets its initial responsibility, the burden then shifts to the opposing

18  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

19  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence

20  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

21  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

22  material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Hexcel Corp. v.

23  Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012); Matsushita, 475 U.S. at 586 n.11.

24         The parties bear the burden of supporting their motions and oppositions with the papers they

25  wish the Court to consider and/or by specifically referencing any other portions of the record for

26

27         [2]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    Defendants in the motion for summary judgment. (ECF No. 28 at 2:3-3:4), Woods v. Carey, Nos. 09-15548, 09-
28  16113, 2012 WL 2626912, at *5 (9th Cir. Jul. 6, 2012); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

consideration. <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. <u>Simmons v. Navajo County, Arizona</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

Verified pleadings and verified oppositions constitute opposing declarations so long as they are based on personal knowledge and they set forth facts admissible in evidence to which the declarant is competent to testify, <u>Moran v. Selig</u>, 447 F.3d 748, 759-60 (9th Cir. 2006); <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000); <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 n.11 (9th Cir. 1995); <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam); <u>Lew</u>, 754 F.2d at 1423, with personal knowledge and competence to testify inferable from the declarations themselves, <u>Barthelemy v. Air Line Pilots Ass'n</u>, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam) (quotation marks omitted); also <u>Sea-Land Service, Inc. v. Lozen Intern, LLC</u>, 285 F.3d 808, 819 (9th Cir. 2002). Arguments or contentions set forth in an unverified responding brief, on the other hand, do not constitute evidence. <u>See</u> <u>Coverdell v. Dep't of Soc. & Health Servs.</u>, 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence). Since unverified, Plaintiff's complaint does not have any evidentiary value. (ECF No. 3.) However, Plaintiff's statement of undisputed material facts in support of his opposition and declaration are both admissible since they are verified. (ECF No. 30, 31.)

**III.    Defendants' Motion for Summary Judgment**

        **A.    Statement of Undisputed Facts**

                **1.    Defendants' Statement of Undisputed Facts**

1.    Defendants Razo, Moreno, Olmus, Rodriguez, and Martinez are correctional officers at the California Correctional Institution (CCI). Dec. of Razo ¶ 1, ECF No. 28-7; Dec. of Moreno ¶ 1, ECF No. 28-6; Dec. of Olmus ¶ 1, ECF No. 28-8; Dec. of K. Rodriguez ¶ 1, No. 28-4; Dec. of Martinez ¶ 1, ECF No. 28-5.)

2.    On September 7, 2009, Defendants Razo and Moreno approached the cell belonging to

Plaintiff, and Plaintiff informed them that he had not eaten for three days.[3]   (ECF No. 28-7 at 6; ECF No. 28-6 at 6.)

3.      Plaintiff wanted to know "whats [sic] up with my Ramadan meal[?]" (ECF No. 28-7 at 6; ECF No. 28-6 at 6.)

4.      Defendant Razo informed Plaintiff that he would contact the kitchen to find out whether Plaintiff was on the list of inmates to receive a Ramadan meal.  (ECF No. 28-7 at 6.)

5.      Defendant Razo then had the door to Plaintiff's cell opened and he and Defendant Moreno escorted Plaintiff to a holding cell.[4]  (Id.; ECF No. 28-6 at 6.)

6.      Defendants Razo and Moreno's plan was to notify a sergeant and the medical staff that Plaintiff had not been eating.  (ECF No. 28-7 at 6; ECF No. 28-6 at 6.)

7.      Once Plaintiff was in the holding cell, Defendant Razo secured the holding cell door.  (ECF No 28-7 at 7; ECF No. 28-6 at 6; Incident Report by Pantoja 5, ECF No. 28-3.)

8.      Plaintiff then sat down and placed his feet on the open food port.  (ECF No. 28-7 at 7; ECF No. 28-6 at 6; ECF No. 28-3 at 5.)

9.      By this time, Plaintiff had become very agitated and verbally abusive towards Defendant Razo.  (ECF No. 28-3 at 5.)

10.      Defendant Razo ordered Plaintiff to put his feet back onto the ground.  (ECF No 28-7 at 7; ECF No. 28-6 at 6.)

11.      Plaintiff complied with this order but then yelled "this is fuckin bullshit I'm Ramadan." (ECF No 28-7 at 7; ECF No. 28-6 at 6.)

12.      Defendant Razo then began to secure the food port door when Plaintiff forcibly pushed it open, striking Defendant Razo on the left hand with the food port door.[5]  (ECF No. 28-7 at 7; ECF No. 28-6 at 6; ECF No. 28-3 at 6.)

---

[3]Plaintiff disputes that Defendants Razo and Moreno approached his cell when Plaintiff informed Defendant Razo that he had not received his Ramadan meal for three days.  (Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment 3, ECF No. 30.)

[4]Plaintiff disputes that Defendants Razo and Moreno escorted him to a holding cell.  (Id.)

[5]Plaintiff states that he never pushed the food port door causing it to strike Razo on his left hand.  (Id.)

13.   Defendant Razo then took a step back and ordered Plaintiff to face the back of the cell. (ECF No. 28-7 at 7; ECF No 28-6 at 7.)

14.   Plaintiff refused to face the back of the cell. (ECF No. 28-7 at 7; ECF No. 28-6 at 7.)

15.   Plaintiff grabbed the food port door with his right hand. (ECF No. 28-7 at 7; ECF No. 28-6 at 7.)

16.   Defendant Razo then deployed pepper spray towards Plaintiff's facial area. (ECF No. 28-7 at 7; ECF No. 28-6 at 7; ECF No. 28-3 at 6.)

17.   Finally complying with orders, Plaintiff sat down on the seat and turned away from Defendant Razo. (ECF No. 28-7 at 7; ECF No. 28-6 at 7.)

18.   Defendant Razo was then able to secure the food port in the cell door. (ECF No. 28-7 at 7; ECF No. 28-6 at 7.)

19.   Defendant Moreno then pressed her personal alarm to summon additional staff. (ECF No. 28-7 at 7; ECF No. 28-6 at 7.)

20.   At no time during his interactions with Plaintiff did Defendant Moreno employ any force towards Plaintiff. (ECF No. 28-6 at ¶ 3.)

21.   Defendant Olmus then arrived in the housing unit. (ECF No. 28-8 at 6.)

22.   Defendant Olmus ordered Plaintiff to turn around and submit to mechanical restraints. (Id.)

23.   Plaintiff complied with this order to turn around and submit to mechanical restraints. (Id.)

24.   At no time during his interactions with Plaintiff did Defendant Olmus employ any force towards Plaintiff. (Id. at ¶ 3.)

25.   Defendants Olmus and Moreno then escorted Plaintiff out of the building and to the medical clinic. (ECF No. 28-8 at 6; ECF No. 28-3 at 6.)

26.   Defendant K. Rodriguez was a search and escort officer on September 7, 2009. (ECF No. 28-4 at ¶ 2.)

27.   Defendant K. Rodriguez responded to the alarm but, by the time he arrived, the incident had concluded and Plaintiff was already being escorted out of the housing unit. (Id.)

28.   Defendant K. Rodriguez was not present for and did not witness any use of force towards Plaintiff. (Id. at ¶ 3.)

29.  Defendant K. Rodriguez did not employ any force towards Plaintiff on September 7, 2009. (Id.)

30.  The best immediate treatment for someone exposed to pepper spray is to simply expose the person to fresh air and provide the person with fresh clothing.  (ECF No. 28-6 at ¶ 4; ECF No. 28-8 at ¶ 4; ECF No. 28-5 at ¶ 4.)

31.  Fresh air decontamination simply involves removing the person from the space where the pepper spray was discharged and allowing him to be exposed to fresh air.  (ECF No. 28-5 at ¶ 4.)

32.  As Plaintiff was being escorted to the medical clinic, and again in the clinic, he was provided with fresh air decontamination consisting of exposure to cool fresh air.  (ECF No. 28-8 at 6; ECF No. 28-6 at 7; Incident Report by Borromeo 8, ECF No. 28-3.)

33.  Plaintiff was also provided with clean clothing.  (Incident Report by Busby 10, ECF No. 28-3.)

34.  Nurse Borromeo was one of the staff persons who responded to the alarm and came to the housing unit.  (ECF No. 28-3 at 8.)

35.  Nurse Borromeo observed that, while being escorted to the clinic, Plaintiff appeared to be in no apparent distress.  (ECF No. 28-3 at 8.)

36.  Seen by Nurse Borromeo, Plaintiff reported that "I have no injuries".  (Plaintiff's Medical Report of Injury or Unusual Occurrence 12, ECF No. 28-3.)

37.  No injuries were found by Nurse Borromeo and it was noted that Plaintiff had been exposed to pepper spray and had been decontaminated.  (ECF No. 28-3 at 12.)

38.  Plaintiff's housing unit is one of the farthest ones from the medical clinic.  (ECF No. 28-5 at ¶ 6.)

39.  It would likely have taken Plaintiff one to two minutes to travel from the housing unit to the medical clinic.  (Id.)

40.  Plaintiff would be outside during this time and would be receiving decontamination from the fresh outdoor air.  (Id.)

41.  Once inside the medical clinic, Plaintiff would again be in a space in which the air had not

1     been exposed to pepper spray and, thus, his decontamination would be continuing.  (Id.)

2  42.  Defendant Razo was also seen by Nurse Borromeo.  (Defendant Razo's Medical Report of

3     Injury or Unusual Occurrence 14, ECF No. 28-3.)

4  43.  Defendant Razo was found to have bruising and discoloration of his left hand.[6]  (Id.)

5  44.  In September 2009, Defendant Martinez was working as a medical escort.  (ECF No. 28-5

6     at ¶ 2.)

7  45.  In this capacity, Defendant Martinez would escort nurses to the prison's housing units when

8     they were summoned to provide medical care to an inmate.  (Id.)

9  46.  It is Defendant Martinez' current understanding that Plaintiff alleges that she interviewed

10     him on September 7, 2009, for the purposes of preparing an incident report and that Plaintiff

11     expressed to her a desire to be decontaminated after having been exposed to pepper spray.

12     (Id. at ¶ 3.)

13  47.  Defendant Martinez has no recollection of speaking with Plaintiff on September 7, 2009, and

14     does not have any recollection of escorting a nurse to Plaintiff's housing unit on that

15     occasion.  (Id. ¶ 5.)

16  48.  When an inmate informs Defendant Martinez that he has been exposed to pepper spray and

17     requests decontamination, it is Defendant Martinez' custom and habit to see whether he has

18     or is receiving decontamination and, if not, to take steps to provide decontamination.  (Id.

19     at ¶ 7.)

20  49.  When Defendant Martinez is acting as a medical escort and escorting a nurse to or from a

21     housing unit, and an inmate informs her that he requires medical attention, it is her custom

22     and habit to refer him to the nurse and allow her to make any decisions on what medical

23     treatment, if any, the inmate requires.  (Id.)

24  50.  If Plaintiff had informed Defendant Martinez on September 7, 2009, that he had been

25     exposed to pepper spray and requested decontamination, Defendant Martinez would have

26

27     [6]Plaintiff disputes that Defendant Razo had any bruise or discoloration on the top of his left hand, the bruise
28  was on the inside of his left hand which Plaintiff claims conflicts with Defendant Razo's claim that he had been
    struck on the top of his left hand.  (Id. at 3-4.)

7

acted consistent with her custom and habit and determined whether decontamination had been provided. (Id. ¶ 8.)

51. In Plaintiff's case, Defendant Martinez would have noted that he had been removed from the location where the pepper spray had been discharged and had been decontaminated with fresh air both on the way to the medical clinic and once he was in the medical clinic. (Id.)

52. Had Plaintiff asked Defendant Martinez for further medical care, she would have acted consistent with her custom and habit and referred him to the nurse who she was escorting and allowed the nurse to make any decisions on what medical treatment, if any, Plaintiff required. (Id.)

53. Based upon his actions on September 7, 2009, Plaintiff was charged with the rule violation of battery on a peace officer. (Rules Violation Report 16, ECF No. 28-3.)

54. Following a hearing, Plaintiff was found guilty of this charge. (Id. at 18.).

55. Plaintiff was assessed a 150 day credit forfeiture and a thirty day loss of privileges. (Id. at 4.)

56. To date, Plaintiff has failed to provide any response to the requests for admissions propounded by the defendants. Plaintiff has therefore made the following admissions with respect to Defendant Martinez: that Defendant Martinez was not deliberately indifferent to his medical needs; that Defendant Martinez did not violate his rights under the Eighth Amendment; that Defendant Martinez did not violate any of his constitutional rights; and that he suffered no injury as a result of the actions of Defendant Martinez. (Defendant Martinez' Requests for Admission, Set One, Nos. 1-4, ECF No. 28-9.)

57. Plaintiff has made the following admissions with respect to Defendant Moreno: that Defendant Moreno did not subject him to excessive force; that Defendant Moreno did not violate his rights under the Eighth Amendment; that Defendant Moreno did not violate any of his constitutional rights; that he suffered no injury as a result of the actions of Defendant Moreno; and that Defendant Moreno was not deliberately indifferent to his medical needs. (Defendant Moreno's Requests for Admission, Set One, Nos. 1-5, ECF No. 28-9.)

58. Plaintiff has made the following admissions with respect to Defendant Olmus: that

Defendant Olmus was not deliberately indifferent to his medical needs; that Defendant Olmus did not violate his rights under the Eighth Amendment; that Defendant Olmus did not violate any of his constitutional rights; and that he suffered no injury as a result of the actions of Defendant Olmus. (Defendant Olmus' Requests for Admission, Set One, Nos. 1-4, ECF No. 28-9.)

59. Plaintiff has made the following admissions with respect to Defendant Razo: that Defendant Razo did not subject him to excessive force; that Defendant Razo did not violate his rights under the Eighth Amendment; that Defendant Razo did not violate any of his constitutional rights; that he suffered no injury as a result of the actions of Defendant Razo; and that Defendant Razo was not deliberately indifferent to his medical needs. (Defendant Razo's Requests for Admission, Set One, Nos. 1-5, ECF No. 28-9.)

60. Plaintiff has made the following admissions with respect to Defendant K. Rodriguez: that Defendant K. Rodriguez did not subject him to excessive force; that Defendant K. Rodriguez did not violate his rights under the Eighth Amendment; that Defendant K. Rodriguez did not violate any of his constitutional rights; and that he suffered no injury as a result of the actions of Defendant K. Rodriguez. (Defendant Rodriguez' Requests for Admission, Set One, Nos. 1-4, ECF No. 28-9.)

## 2.    Plaintiff's Statement of Undisputed Facts

1. Defendants Razo, Moreno, Olmus, Rodriguez, and Martinez are correctional officers at the CCI. (Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Opposition to Motion for Summary Judgment 1, ECF No. 30.)

2. Plaintiff inquired about his Suri (Ramadan meal). (Id.)

3. Defendant Razo informed Plaintiff that he would contact the kitchen to find out whether Plaintiff was on the list of inmates to receive a Ramadan meal. (Id. at 2.)

4. Defendant Razo put Plaintiff in a holding cell and secured it. (Id.)

5. At no time during this incident did Defendants Moreno, Olmus, Rodriguez, or Martinez personally use any force toward Plaintiff. (Id.)

6. Plaintiff was never allowed or offered an opportunity to use cool running water after being

1     pepper sprayed.  (<u>Id.</u>)

2   7.     Plaintiff was provided with clean clothing.  (<u>Id.</u>)

3   8.     On September 7, 2009, Plaintiff was charged with the rule violation of battery on a peace

4     officer.  (<u>Id.</u>)

5   9.     Following a hearing, Plaintiff was found guilty of this charge.  (<u>Id.</u>)

6   10.    Plaintiff was assessed a 150 day credit forfeiture and a thirty day loss of privileges.  (<u>Id.</u> at

7     3.)

8     **B.**    **Defendants' Position**

9     Defendants move for summary judgment on the grounds that there is no evidence to support

10 Plaintiff's Eighth Amendment claims against Defendants Razo, Moreno, Rodriguez, Olmus, and

11 Martinez; judgment for Plaintiff on the excessive force claim is barred as it would necessarily imply

12 the invalidity of his conviction in a prison disciplinary hearing; and Defendants are entitled to

13 qualified immunity. (Memorandum of Points and Authorities in Support of Defendants' Motion for

14 Summary Judgment 1, ECF No. 28-1.)

15     Defendant Razo argues that Plaintiff did not suffer any injury from the actions of Defendant

16 Razo.  The evidence shows that it was Defendant Razo who suffered an injury, bruising and

17 discoloration of his left hand, when Plaintiff slammed the food port door on Defendant Razo's hand.

18 Since Plaintiff had slammed the food port door on Defendant Razo's hand and refused to let go of

19 the food port and face the back of the cell, there was a need for the application of force.  The

20 relationship between the need for force and the amount of force used shows there was no excessive

21 force.  Defendant Razo administered appropriate force, a single burst of pepper spray, in response

22 to Plaintiff's refusal to comply with Defendant Razo's orders.  The threat perceived was very high.

23 Plaintiff had become agitated and verbally abusive, and was refusing to comply with the order to

24 release the food port door and face the back of the cell.  (<u>Id.</u> at 8.)  Confronted with an angry,

25 argumentative, and  out of control inmate, who had physically attacked him and was refusing to

26 comply with orders, the threat reasonably perceived by Defendant Razo was high.  (<u>Id.</u> at 8-9.)

27 Finally, Defendant Razo made efforts to temper his response by repeatedly giving Plaintiff orders

28 that were ignored.  It was only when Plaintiff failed to comply with the orders that Defendant Razo

administered the pepper spray in an attempt to safely secure Plaintiff in the holding cell.  Defendant Razo is entitled to summary judgment.  (Id. at 9.)

It is clear from the evidence that Defendants Moreno and Rodriguez did not use any force against Plaintiff.  Defendant Moreno merely escorted Plaintiff to the holding cell and was present when Defendant Razo administered the single burst of pepper spray.  Defendant Rodriguez did not arrive on the scene until after Plaintiff had been pepper sprayed.  (Id.)  Defendants Moreno and Rodriguez are entitled to summary judgment.  (Id. at 9-10.)

The facts of Plaintiff's excessive force claim are the same facts which were the basis for his conviction of a rule violation.  A judgment in favor of Plaintiff on the excessive force claim would necessarily imply the invalidity of the prison disciplinary hearing finding Plaintiff guilty of battery on a peace officer.  (Id. at 10.)  After being found guilty, Plaintiff was assessed a 150 day credit forfeiture and 30 day loss of privileges.  Plaintiff's claim merely reasserts that same issues that were already dealt with in the rule violation hearing and thus Defendants Razo, Moreno, and Rodriguez are entitled to judgment as a matter of law on the excessive force claim.  (Id. at 11.)

Defendants argue the evidence makes it abundantly clear that Defendants Razo, Moreno, Olmus, and Martinez were not deliberately indifferent to Plaintiff's medical needs.  Initially, Plaintiff has admitted such by failing to respond to Defendants' Request for Admissions.  (Id. at 12.)  There is no evidence that Plaintiff suffered a sufficiently serious deprivation.  Following the incident in the holding cell, Nurse Borromeo observed that Plaintiff did not appear to be in any apparent distress and he told her that he had no injuries.  (Id. at 13.)

Following the exposure to pepper spray, Plaintiff was escorted to the medical clinic for examination.  Along the way and at the clinic he was provided with fresh air decontamination and then provided clean clothing, the standard response when someone is exposed to pepper spray.  Defendant Martinez has no recollection of interacting with Plaintiff on this day, however if he had requested decontamination, she would have responded consistent with her custom and habit, and noted that Plaintiff received ample fresh air decontamination.  After Plaintiff was exposed to pepper spray, medical staff was promptly summoned to the scene, Plaintiff was taken to the medical clinic and received appropriate decontamination.  Accordingly, Defendants Razo, Moreno, Rodriguez,

Olmus, and Martinez argue they are entitled to summary judgment.  (Id.)

C.    **Plaintiff's Position**

On September 7, 2009, while Defendant Razo was passing out lunches, Plaintiff informed him that third watch had failed to bring his Ramadan meal for three days.  (Dec. of Joe Baby Burnell in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ¶¶ 2, 3, ECF No. 31.)  Defendant Razo informed Plaintiff that he would check on his meal and when he returned Defendant Razo brought Plaintiff a sack lunch with sandwich meat and a regular breakfast with beef hash.  Plaintiff told Defendant Razo that the kitchen could not have sent that for him because he was a documented vegetarian and was participating in Ramadan.  Defendant Razo responded that this was what the kitchen had sent for him, and Plaintiff could take it or leave it.  Plaintiff took the food tray, and told Defendant Razo that he was not going to return it until he could speak to a sergeant.  (Id. at ¶ 3.)

When Defendant Razo returned to pick up the food tray, Plaintiff refused to return it.  Defendant Razo ordered Plaintiff to return the food tray, but Plaintiff again refused until he could speak to a sergeant.  Defendant Razo motioned for the door of the cell to be opened.  Once the door was open, Defendant Razo ordered Plaintiff to return the tray a third time.  When Plaintiff refused, Defendant Razo took a step forward and Plaintiff took a step back, blocking the entrance to prevent Defendant Razo from entering the cell.  Plaintiff told Defendant Razo that he was not going to enter the cell while Plaintiff was in it.  Defendant Razo ordered Plaintiff and his cellmate to come out of the cell and go downstairs to the dayroom, and they complied.  (Id. at ¶ 4.)

Once Plaintiff was in the dayroom, Defendant Razo entered the cell and retrieved the food tray.  Defendant Razo then ordered Plaintiff back to his cell.  Plaintiff refused to return to the cell.  Plaintiff requested to speak to a sergeant.  Defendant Razo ordered Plaintiff inside the holding cell.  Defendant Razo then secured the lock and returned to picking up trash and trays.  (Id. at ¶ 5.)

While Plaintiff was conversing with Defendant Rodriguez, Defendants Razo and Moreno came over to the holding cell and a verbal confrontation occurred.  Plaintiff had his feet on the front door of the holding cell, and Defendant Razo ordered him to put his feet on the floor.  At first Plaintiff refused, but after the second order he complied.  Once Plaintiff's feet were on the floor,

Defendant Razo lifted the food port door, and all three officers began walking out of the section. Plaintiff put the food port back down.  The officers turned around, and Defendant Razo ran up to the cell and emptied an entire can of pepper spray into Plaintiff's face.  Approximately one minute later, Plaintiff was ordered to cuff up and was taken to the medical unit.  (Id. at ¶ 6.)

On the way to the medical clinic, Plaintiff requested that he be decontaminated with cool running water in compliance with California Department of Corrections and Rehabilitation ("CDCR") Departmental Policies.  His requests were ignored.  (Id. at ¶ 7.)  Once in the medical clinic, Plaintiff was placed in a holding cell and ordered to strip.  Plaintiff was given paper underwear and a pair of socks.  Plaintiff was gagging uncontrollably due to the amount of pepper spray.  Plaintiff continued to request to be decontaminated, but was ignored.  (Id. at ¶ 8.)

Defendant Martinez arrived to do a medical evaluation.  Plaintiff informed Defendant Martinez that he had not been decontaminated.  Defendant Martinez responded that he had been given fresh air, which constitutes decontamination.  Plaintiff falsely informed Defendant Martinez that he had asthma in the hopes that he would be decontaminated.  Plaintiff's request to be decontaminated was ignored.  (Id. at ¶ 9.)  After about forty-five minutes to an hour, Plaintiff's vital signs stabilized and he escorted back to a holding cell.  (Id. at ¶¶ 9, 10.)  Approximately twenty minutes later, Defendants Olmus and Moreno came to the cell and read Plaintiff his Miranda rights.  Plaintiff refused to make a statement or sign paperwork.  Plaintiff asked to be decontaminated again and was denied.  (Id. at ¶ 10.)

Plaintiff argues that due to the use of excessive force and failure to decontaminate him, his Eighth Amendment rights were violated.  (Id. at ¶ 11.)  Plaintiff claims that Defendant Razo had no injury to the top of his left hand.  (Id. at ¶ 12.)  When Plaintiff asked investigating officers why no pictures had been taken of Defendant Razo's hand, they ignored his questions.  Plaintiff alleges that Borromero falsified the report to support the battery charge and justify the use of force against Plaintiff.  (Id. at ¶ 13.)  Plaintiff requests that Defendants' motion for summary judgment be denied.

### D.    Defendants' Reply

Defendants request that the motion for summary judgment be granted because Plaintiff failed to comply with the Local Rules.  Plaintiff's failure to respond to the requests for admissions

conclusively establishes his claims.  (Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment 2, ECF No. 32.)  There is no evidence that Defendants Razo, Moreno, and Rodriguez subjected Plaintiff to excessive force in violation of the Eighth Amendment.  (Id. at 3.) Judgment in favor of Plaintiff would necessarily imply the validity of his disciplinary hearing conviction.  (Id. at 4.)  There is no evidence that Defendants Razo, Moreno, Olmus, or Martinez were deliberately indifferent to Plaintiff's medical needs.  (Id. at 4-5.)  Defendants are entitled to qualified immunity.  (Id. at 6.)

**E.    Legal Standards**

**1.    Eighth Amendment**

Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States."  Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).  To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981).  In order to be held liable each defendant must have personally participated in the deprivation of the plaintiff's rights.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

**a.    Excessive Force**

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response.  Hudson, 503 U.S. at 7.

A prison official's use of force to maliciously and sadistically cause harm violates the

contemporary standards of decency.  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).  However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." Gaddy, 130 S. Ct. at 1179 (quoting Hudson, 503 U.S. at 9).  Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted."  Whitley, 475 U.S. at 321; Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003).  Although the extent of the injury is relevant, the inmate does not need to sustain serious injury.  Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79.  The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force. Hudson, 503 U.S. at 9-10.

### b.  Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 837.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.  "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm,

1   Jett, 439 F.3d at 1096.

2       In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

3   civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

4   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton

5   v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A]

6   complaint that a physician has been negligent in diagnosing or treating a medical condition does not

7   state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does

8   not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at

9   106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith,

10  974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104

11  F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish

12  deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334

13  (9th Cir. 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not

14  support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

15              **2.    Qualified Immunity**

16      The doctrine of qualified immunity protects government officials from civil liability where

17  "their conduct does not violate clearly established statutory or constitutional rights of which a

18  reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting

19  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified

20  immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court

21  determines if the facts as alleged state a violation of a constitutional right and if the right is clearly

22  established so that a reasonable official would have known that his conduct was unlawful.  Saucier,

23  533 U.S. at 200.  A district court is "permitted to exercise their sound discretion in deciding which

24  of the two prongs of the qualified immunity analysis should be addressed first in light of the

25  circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818.  The inquiry as to whether

26  the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, No. 08-

27  15957, 2010 WL 3547637, at *2 (9th Cir. Sept. 14, 2010) (quoting Tortu v. Las Vegas Metro. Police

28  Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).

### F.    Discussion

The Court finds that Defendants have met their initial burden of informing the Court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus., 475 U.S. at 586.

### 1.    Failure to Comply with Local Rule

Defendants argue that they are entitled to summary judgment because Plaintiff failed to comply with Local Rule 260(b) which requires that he reproduce Defendants' statement of undisputed facts and admit those that are undisputed and deny those that are disputed.  (ECF No. 32 at 2.)

The Court declines to grant Defendants' motion for summary judgment based on Plaintiff's failure to comply with the Local Rule.  By failing to specifically challenge the facts contained in Defendants' statement of undisputed facts, Plaintiff is deemed to have admitted those facts.  Beard v. Banks, 126 S. Ct. 2572, 2577 (2006).  Plaintiff has submitted a statement of undisputed facts.  To the extent that Plaintiff's statement of facts or disputed facts do not dispute Defendants' statement of undisputed facts, they are deemed admitted.

### 2.    Requests for Admissions

Defendants argue that since Plaintiff failed to respond to Defendants' requests for admissions, he has admitted that Defendants did not subject him to excessive force, violate his Eighth Amendment rights, violate any of his constitutional rights, or cause him to suffer any injury. (ECF No. 28 at 7-8.)

Rule 36 of the Federal Rules of Civil Procedure allows a part to request another party to admit the truth of any matter relating to the facts at issue in the action or the genuineness of documents. Fed. R. Civ. P. 36(a)(1).  Further, the Rule provides that a request for admissions is deemed admitted if a response to the request for admission is not served within thirty days of the date of service of the request. Fed. R. Civ. P. 36(a)(3).  "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed.

R. Civ. P. 36(b).  Failure to answer or object to a proper request for admission is itself an admission.  Asea, Inc. V. Southern Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981).

The Court has the ability to withdraw the admission at the motion of the party.  However, Plaintiff did not file a request to withdraw the admissions or address his failure to respond to the request for admissions in his opposition to Defendants' motion for summary judgment.  By operation of law, due to Plaintiff's failure to respond to the request for admissions, those requests are deemed admitted.

Defense counsel submits a declaration demonstrating that the requests for admissions were timely filed and no response was received from Plaintiff.  (Dec. Of Wilson ¶¶ 3-7, ECF No. 28-9.)

Defendants Martinez and Olmus' requests for admissions to Plaintiff include the following:

1.      Defendant was not deliberately indifferent to your medical needs.

2.      Defendant did not violate your rights under the Eighth Amendment.

3.      Defendant did not violate your constitutional rights.

4.      You suffered no injury as a result of the actions of Defendant.

(Id. at 5-6, 14-15.)

Defendants Moreno, Razo, and Rodriguez's request for admissions to Plaintiff include the following:

1.      Defendant did not subject you to excessive force.

2.      Defendant did not violate your rights under the Eighth Amendment.

3.      Defendant did not violate any of your constitutional rights.

4.      You suffered no injury as a result of the actions of Defendant.

5.      Defendant was not deliberately different to your medical needs.[7]

(Id. at 9-10, 18-19, 22-23.)

The purpose of the requests for admissions is to eliminate matters from trial where there is no dispute, and they should not be used to demand that the adverse party admit the truth of a legal conclusion.   Vaden v. Summerhill, No. 2:06-cv-01836-GEB-KJM, , 2008 WL 822152, at *2

---

[7]This request was not propounded to Defendant Rodriguez.

(E.D.Cal. March 27, 2008).   Other than the request that Plaintiff admit he suffered no injury, Defendants' requests for admissions seek to have Plaintiff admit legal conclusions and are not a proper subject for a request for admission.   Doe v. City of San Mateo, No. 3:07-cv-05596-SI, 2009 WL 1636142, at *1 (N.D.Cal. June 8, 2009).   Accordingly, it is deemed admitted that Plaintiff suffered no injury as result of the actions of Defendants Martinez, Olmus, Moreno, Razo, and Rodriguez.

**3.   Excessive Force**

**a.   Defendants Moreno and Rodriguez**

In order to find that Defendants Moreno and Rodriguez violated Plaintiff's rights under the Eighth Amendment by using excessive force, Defendants Moreno and Rodriguez would have to use force on Plaintiff.   It is undisputed that Defendants Moreno and Rodriguez did not use force on Plaintiff.   (Plaintiff's Statement of Undisputed Facts ("PUF") 5; Defendants Statement of Undisputed Facts ("DUF") 20, 29.)   Accordingly, there is no genuine issue as to any material fact and Defendants Moreno and Rodriguez motion for summary judgment on the use of force claim should be granted.

**b.   Defendant Razo**

Defendant Razo argues that a judgment in favor of Plaintiff on the excessive force claim would necessarily imply the invalidity of the prison disciplinary hearing finding Plaintiff guilty of battery on a peace officer and, therefore, he is barred from bringing his excessive force claim.   (ECF No. 28-1 at 10.)   After being found guilty, Plaintiff was assessed a 150 day credit forfeiture and 30 day loss of privileges.   (Id. at 10-11.)

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a § 1983 action and their sole remedy lies in habeas corpus relief.   Wilkinson v. Dotson, 544 U.S. 74, 78 (2005).   Often referred to as the favorable termination rule, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or *indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody*." Wilkinson, 544 U.S. at 81 (emphasis added).   Thus, "a state prisoner's § 1983 action is barred

1  (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the

2  target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if*

3  success in that action would necessarily demonstrate the invalidity of confinement or its duration."

4  Id. at 81-2.

5       Given that Plaintiff lost time credits as a result of being found guilty of the prison disciplinary

6  charge, his claim is barred by the favorable termination rule if a finding in his favor on his claim

7  would necessarily imply the invalidity of the disciplinary conviction. Wilkinson, 544 U.S. at 81-2;

8  Edwards v. Balisok, 520 U.S 641, 80-81 (1997).  In this instance, the Court finds that it would not.

9       Plaintiff was accused of slamming the food port door on Defendant Razo's hand and was

10  found guilty of battery, which requires Plaintiff to have made contact with the person or clothing of

11  staff, the contact had to be deliberate, and the staff member found the contact unwelcome or

12  offensive. (ECF No. 28-3 at 18.)  After Plaintiff allegedly battered Defendant Razo, he opened the

13  food port and was ordered to move to the back of the cell, and refused to comply.  (DUF 12-15.)

14  Plaintiff was pepper sprayed for refusing to comply with Defendant Razo's order.  (DUF 16.)

15  Plaintiff was not pepper sprayed for battering Defendant Razo, but for failing to comply with the

16  order to remove his hand from the food port and move to the back of the cell.  Finding that

17  Defendant Razo was justified in pepper spraying Plaintiff for failing to comply with his orders would

18  not necessarily demonstrate the invalidity of the rule violation for battery of Defendant Razo.  Since

19  Plaintiff is not barred from bringing this claim based upon the favorable termination rule, the issue

20  is whether Defendant Razo's the force used was a good faith effort to restore discipline or was

21  malicious and sadistic for the purpose of causing harm.

22       In this action Plaintiff has not alleged that the amount of pepper spray used was excessive,

23  but that the use of pepper spray itself constituted excessive force because there was no need for the

24  use of force at all.  Plaintiff had been continually non-complaint with the orders of Defendant Razo,

25  which resulted in him being placed in the holding cell.  It is undisputed that after Defendant Razo

26  closed the food port, Plaintiff opened it up.  Plaintiff claims that he closed the food port while the

27  officers were walking away, and Defendant Razo ran back to the cell and emptied a can of pepper

28  spray into Plaintiff's face.  However, Plaintiff has failed to dispute that Defendant Razo ordered him

to face the wall, he had his hand on the food port, and he refused to comply. (DUF 13, 14.) Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury, not the judge. Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011). Where a case turns on a mixed question of law and fact and law, and "the only disputes relate to the legal significance of undisputed facts, the controversy is a question of law suitable for disposition on summary judgment." Washington Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).

Whether Defendant Razo was at the door of the cell or was walking away and came back after Plaintiff opened the food port does not preclude the finding that Plaintiff was non-complaint and was pepper sprayed in a good faith effort to restore discipline. In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Hudson, 503 U.S. at 7.

Plaintiff admits that he had refused to comply with three orders to return his food tray, and blocked Defendant Razo when he attempted to enter his cell. (ECF No. 31 at ¶ 4.) After being ordered out of his cell, Plaintiff refused to comply with the order to return to the cell. (Id. at ¶ 5.) Plaintiff refused to comply with Defendant Razo's first order to remove his feet from the door of the cell and place them on the ground. (Id. at ¶ 6.) Plaintiff was very agitated and abusive toward Defendant Razo. (DUF 9.)

Defendant Razo closed the food port. (DUF 12.) The food port is kept closed when not in use in order to preserve safety and security, because if it is left open an inmate could reach through and harm staff, another inmate, or pass contraband. (ECF No. 28-7 at ¶ 4.) After Plaintiff opened the food port door, Defendant Razo ordered him to face the back of the cell wall, and Plaintiff refused to comply. (DUF 13, 14.) Plaintiff grabbed the food port door with his right hand. (DUF 15.) It was at this time that Defendant Razo administered the pepper spray to Plaintiff's facial area. (DUF 16.) After Defendant Razo administered the pepper spray, Plaintiff complied with the order and sat down and turned away from Defendant Razo, allowing Defendant Razo to secure the food port door. (DUF 17, 18.) Factors that can be considered are "the need for the application of force,

the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley, 475 U.S. at 321.  It is clear that Defendant Razo was faced with a situation where the use of force was necessary to gain the compliance of Plaintiff and secure the food port for security reasons.

Plaintiff clearly and admittedly created a situation that required some sort of response by correctional officers to regain order.  His failure to move away from the food port door to allow it to be closed created a security risk that needed to be addressed.  Faced with a situation where Plaintiff was refusing to comply with the order to move away from the food port, Defendant Razo administered a single continuous burst of pepper spray to gain compliance.  (ECF No. 28-7 at 7.) The administration of tear gas to gain compliance of an recalcitrant inmate may be used without violating the Eighth Amendment.  See Clement, 298 F.3d at 903; Hallet v. Morgan, 296 F.3d 732, 747 (9th Cir. 2002); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979).  The use of pepper spray to gain Plaintiff's compliance was an appropriate response given the situation faced by Defendant Razo.

Finally, Defendant Razo gave a verbal order to Plaintiff to move away from the food port door and Plaintiff failed to comply.  Plaintiff had been refusing to comply with Defendant Razo during this entire incident and multiple orders had been given to gain Plaintiff's compliance.  The Court finds that there is no evidence in the record that the force used against Plaintiff was malicious and sadistic.  Rather, the facts support Defendant Razo's position that the use of pepper spray was limited to a good faith effort to restore discipline in light of Plaintiff's conduct and failure to obey orders to turn away from the cell door.  The Court finds that there is no genuine issue as to any material fact and Defendant Razo is entitled to summary judgment on Plaintiff's excessive force claim.

### 4.    Deliberate Indifference

#### i.    Serious Medical Need

Plaintiff claims that after he was pepper sprayed in the face, he was gagging uncontrollably due to the amount of pepper spray that was used on him, having difficulty breathing, feeling faint, his blood pressure was so high that the nurse told him he would send himself into shock if he didn't

stop breathing sporadically, and his vision was impaired. Plaintiff has sufficiently demonstrated that he had a serious medical need.

### ii.     Defendant Razo

After Plaintiff was pepper sprayed, he was removed from the holding cell and approximately one minute later he was being escorted to the medical unit by Defendants Olmus and Moreno. (DUF 25; ECF No. 31 at ¶ 6.) While Defendant Razo was aware that Plaintiff had been pepper sprayed in the face, once the pepper spray had been administered Defendants Olmus and Moreno removed Plaintiff from the dayroom and escorted him to the medical unit for evaluation. Defendant Razo was no longer personally involved with Plaintiff.

While Plaintiff alleges that the entire time he was being escorted he requested to be decontaminated with cool running water, there is no evidence that Plaintiff made such a request to Defendant Razo, that Defendant Razo was aware the request had been made to the escorting officers, or that Defendant Razo was aware that Plaintiff was not properly decontaminated. Accordingly, the Court finds that Plaintiff has failed to demonstrate that material issues of fact exist and Defendant Razo's motion for summary judgment on the deliberate indifference claim should be granted.

### iii.     Defendants Moreno and Olmus

Although Defendants have presented evidence that the best immediate treatment for someone exposed to pepper spray is to simply expose the person to fresh air and provide the person with fresh clothing**,** Defendants do not address whether fresh air decontamination is sufficient for decontamination when an individual has substantial amounts of pepper spray in his face. In this instance, Defendant Razo discharged his canister of pepper spray in Plaintiff's facial area. (DUF 16; ECF No. 31 at 4; ECF No. 28-7 at 7.) Prison officials may be deliberately indifferent if they are aware of the harmful effects of pepper spray and refuse to provide showers or medical care. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

While Plaintiff states that the entire time he was being escorted by Defendants Moreno and Olmus, he was requesting to be decontaminated with cool running water, Plaintiff has failed to present any evidence to show that Defendants Olmus and Moreno were aware that the fresh air contamination was insufficient. Nurse Borromeo responded to the alarm and came to the housing

unit. (DUF 34.)  While Plaintiff was being escorted to the medical clinic, Nurse Borromeo observed that he appeared to be in no apparent distress.  (DUF 35.)  Additionally, Plaintiff told Nurse Borromeo that "I have no injuries".  (DUF 36.)  The escort occurred approximately one minute after Plaintiff had been pepper sprayed.  The distance from the housing unit to the medical unit was covered in approximately two minutes.  (DUF 39.)  Plaintiff does not present any evidence that during the brief time that Defendants Olmus and Moreno were escorting him to the medical unit he was suffering from any symptoms due to the exposure to pepper spray or that fresh air decontamination was insufficient.  Further, Plaintiff was immediately taken to the medical unit for evaluation.  Plaintiff fails to show that Defendants Moreno and Olmus knew of and disregarded an excessive risk to his health.  Farmer, 511 U.S. at 837.

Although Plaintiff alleges that Defendants Olmus and Moreno returned approximately an hour later to take his statement, and he refused to sign the Miranda form because his vision was slightly impaired, Plaintiff fails to set forth facts to show that Defendants Olmus and Moreno were aware that he was having any symptoms at this time.  Plaintiff has failed to establish a material issue of fact that Defendants Olmus and Moreno were aware that he was in need of anything more than fresh air decontamination during the escort to the medical unit for evaluation or when they returned to take his statement.  Accordingly, the Court finds that there are no material issues of fact and Defendants Moreno and Olmus' motion for summary judgment on the deliberate indifference claim should be granted.

### iv.   **Defendant Martinez**

Defendant Martinez states that she has no recollection of speaking with Plaintiff on the date in question, and if he had told her that he was in need of decontamination she would have referred him to the nurse for evaluation and treatment.  (DUF 46-50, 52.)  Further if Plaintiff had told her that he needed decontamination she would have noted that he had been provided with fresh air decontamination.  (DUF 51.)  Plaintiff alleges that while he was in the medical clinic, he was gagging uncontrollably due to the amount of pepper spray that had been used.  (ECF No. 31 at ¶ 8.) Defendant Martinez examined Plaintiff and told him to stop shaking so she could complete the examination.  When Plaintiff informed her that he had not been decontaminated, Defendant Martinez

24

1   told him that fresh air decontamination was sufficient.  Plaintiff was feeling faint and was having

2   difficulty breathing.  When his vital signs were taken his blood pressure was high and he was told

3   by the nurse that if he did not stop breathing sporadically, he would go into shock.  (Id. at ¶ 9.)

4          Viewing these facts in the light most favorable to Plaintiff, a jury could conclude that

5   Defendant Martinez knew that Plaintiff had not been adequately decontaminated due to his exposure

6   to pepper spray.  There is a question regarding whether Defendant Martinez was aware that fresh air

7   decontamination was insufficient due to the symptoms that Plaintiff was experiencing and she failed

8   to act, causing Plaintiff to suffer the effects of the pepper spray exposure.  Jett, 439 F.3d at 1096.

9   The Court finds that Plaintiff has demonstrated that a genuine issue of material fact exists and

10  Defendant Martinez' motion for summary judgment should be denied.

11         **G.     Qualified Immunity**

12         Defendants argue that no correctional officer in Defendant Razo's position would believe he

13  had violated a prisoner's clearly established right by discharging pepper spray towards the

14  recalcitrant prisoner who had struck him with the food port door and was refusing orders to release

15  the door and move to the back of the cell.  (ECF No. 28-1 at 14.)  No reasonable officer would

16  believe he was violating a prisoner's rights when, after being exposed to pepper spray, an alarm

17  sounded, a nurse responded to the scene, the inmate was taken to the medical clinic, and provided

18  with fresh air decontamination and a change of clothes.  Defendants argue they are entitled to

19  qualified immunity.  (Id. at 15.)

20         There is no need to consider the defense of qualified immunity with respect to the claims that

21  the Court has resolved in Defendants favor on summary judgment.  Wilkie v. Robbins, 551 U.S. 537,

22  567 (2007).  Therefore, the Court shall only address the excessive force claim against Defendant Razo

23  and the deliberate indifference claim against Defendant Martinez.

24         **1.     Excessive Force**

25         In this instance, even if Defendant Razo had used excessive force by pepper spraying Plaintiff,

26  he would also be entitled to qualified immunity.  It is not clearly established that a recalcitrant

27  prisoner has a right to be free from pepper spray.  See Giles v. Soto, No. 1:07-cv-00197-CKJ, 2011

28  WL 4433109, *3 (E.D.Cal. Sept. 21, 2011) (correctional officers entitled to qualified immunity for

1  pepper spraying inmate who refused to comply with order); <u>Howard v. Nunley</u>, No. 1:06-cv-00191-

2  NVW, 2010 WL 3785536, *5-6 (E.D.Cal. Sept. 24, 2010) (not clearly established that using pepper

3  spray on disobedient prisoner would violate constitutional right).  Since Plaintiff refused Defendant

4  Razo's order to turn away from the cell door, a reasonable officer would not believe that pepper

5  spraying Plaintiff to gain compliance would violate a clearly established right.  The Court

6  recommends that Defendant Miranda's motion for summary judgment on the grounds of qualified

7  immunity be granted.

8                          **2.    <u>Deliberate Indifference</u>**

9         As discussed, viewing the facts in the light most favorable to Plaintiff, Defendant Martinez'

10  conduct violated a constitutional right.  Accordingly, the first prong of the qualified immunity inquiry

11  set forth in <u>Saucier</u> has been met.  <u>Saucier</u>, 533 U.S. at 201.  Turning to the second prong, at the time

12  of the incident at issue here, it was clearly established that a prison official who is aware of the

13  harmful effects of pepper spray and refuses to provide showers or medical care to an inmate may

14  violate the Eighth Amendment.  <u>Clement</u> 298 F.3d at 906.

15         Accordingly, the Court cannot determine, as a matter of law, that Defendant Martinez' actions

16  were entitled to qualified immunity, and Defendant Martinez' motion for summary judgment on that

17  ground should be denied.

18  **IV.   <u>Conclusion and Recommendation</u>**

19         Based on the foregoing, IT IS HEREBY RECOMMENDED that:

20         1.    Defendants' motion for summary judgment should be GRANTED IN PART AND

21               DENIED IN PART as follows:

22               a.    Defendants Moreno and Rodriguez motion for summary judgment on the

23                     excessive force claim should be GRANTED;

24               b.    Defendant Razo's motion for summary judgment on the excessive force and

25                     deliberate indifference claims should be GRANTED;

26               c.    Defendant Olmus and Moreno's motion for summary judgment on the

27                     deliberate indifference claim should be GRANTED;

28               d.    Defendant Martinez motion for summary judgment on the deliberate

indifference claim should be DENIED; and

e.      Defendant Martinez' motion for summary judgment on the grounds that she is entitled to qualified immunity should be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __August 8, 2012__          _____/s/ **Barbara A. McAuliffe**_____
                                                        UNITED STATES MAGISTRATE JUDGE